FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 31, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

DAYNA R.,[1]

                Plaintiff,

    vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[2]

                Defendant.

No. 2:19-cv-00171-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 14, 15

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 2, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of February 1, 2013. Tr. 189, 274-83. The application was denied initially, and on reconsideration. Tr. 214-17, 221-23. Plaintiff appeared before an administrative law judge (ALJ) on May 26, 2017. Tr. 159-88. On April 30, 2018, the ALJ denied Plaintiff's claim. Tr. 13-31.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 2, 2015. Tr. 18. At step two, the ALJ found Plaintiff has the following severe impairments: obesity; spine disorder; fibromyalgia; major joint dysfunction; affective disorder; and anxiety disorder. Tr. 18. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the

severity of a listed impairment.  Tr. 19.  The ALJ then concluded Plaintiff has the

RFC to perform sedentary work with the following limitations:

> [Plaintiff] can lift and carry 10 lbs. occasionally and less than 10 lbs.
> frequently, can sit for 6 hours in an 8-hour workday with normal rest
> breaks, and can stand and/or walk for 2 hours in an 8-hour workday
> with normal rest breaks.  She can occasionally climb ramps and stairs,
> balance, stoop, bend, squat, kneel, and crouch.  She can never crawl or
> climb ladders, ropes, or scaffolds.  She can frequently handle and
> finger with her bilateral upper extremities.  She cannot tolerate
> extremes of heat, cold, wetness, heavy vibration, or machinery.  She is
> able to perform work that involves superficial interaction with co-
> workers and the general public.  She is able to understand, carry out,
> and remember simple routine tasks, adapt to minor changes in the
> workplace, and respond appropriately to supervision.

Tr. 20-21.

At step four, the ALJ found Plaintiff is unable to perform any past relevant

work.  Tr. 25.  At step five, the ALJ found that, considering Plaintiff's age,

education, work experience, RFC, and testimony from the vocational expert, there

were jobs that existed in significant numbers in the national economy that Plaintiff

could perform, such as, wafer breaker/semiconductor, touchup screener, and table

worker.  Tr. 26-27.  Therefore, the ALJ concluded Plaintiff was not under a

disability, as defined in the Social Security Act, from the date of the application

though the date of the decision.  Tr. 27.

On March 22, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-two analysis;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4. Whether the ALJ conducted a proper step-five analysis.

ECF No. 14 at 9.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly weighed the medical opinion of her rheumatologist Nina Flavin, M.D. ECF No. 14 at 11-13, ECF No. 16 at 2-3. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v.*

*Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (*citing Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

To the extent that Dr. Flavin's letter constitutes a medical opinion, it is contradicted by the opinion of the state agency consultant, Dr. Kester, who

ORDER - 9

concluded Plaintiff was not disabled and could perform light work.  *See* Tr. 207-

11.  Accordingly, the ALJ was required to provide specific and legitimate reasons

to give the opinion less weight.  *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at

830-831).

Dr. Flavin has served as the treating physician for Plaintiff's

fibromyalgia and ankylosing spondylitis since February 2013.  Tr. 731.  On

May 10, 2017, she submitted a letter in support of Plaintiff's application for

disability.  Tr. 731.  Dr. Flavin noted that she was not a disability evaluator,

had no training in determining physical capacity, and as a result, deferred

completing a physical medical source statement.  Tr. 731.  Dr. Flavin

provided a general explanation of the conditions and of symptoms that can

result from the conditions.  Tr. 731.  Dr. Flavin indicated she "supported

[Plaintiff's] decision to apply for disability.  Tr. 731.

The ALJ gave limited weight to Dr. Flavin's letter.  Tr. 25.  The ALJ first

noted that the letter lacked statements "regarding the claimant's residual functional

capacity, or the frequency or intensity of the exacerbations and flare-ups."  Tr. 25.

Medical opinions are "statements from physicians and psychologists or other

acceptable medical sources that reflect judgments about the nature and severity of

[a claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis,

what [they] can still do despite [their] impairment(s), and [their] physical or mental

restrictions." 20 C.F.R. § 416.927(a)(1).  When a medical source's records do not reflect physical or mental limitations or otherwise provide information about the ability to work, the ALJ is not required to provide specific and legitimate reasons for rejecting the statements therein.  *See, e.g., Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide [specific and legitimate] reasons' for rejecting [the] report").  Dr. Flavin's letter does not reflect judgments or provide information about the nature and severity of Plaintiff's impairments, Plaintiff's particular symptoms, her prognosis, her functional limitations, or her ability to work; it provides only a general explanation of ankylosing spondylitis and fibromyalgia.  As a result, the letter does not constitute a medical opinion and the ALJ was not required to provide reasons to give the letter limited weight.  *Id*.  Moreover, to the extent that Dr. Flavin concludes Plaintiff is unable to work by stating that she "support[s] her decision to apply for disability," such a conclusion is not a medical opinion and is an issue reserved for the Commissioner.  *See* 20 C.F.R. § 416.927(d) (A statement by a medical source that a claimant is "unable to work" is not a medical opinion and is not due "any special significance.").

Even if the letter constitutes a medical opinion, the ALJ provided a specific and legitimate reason for giving it only "some weight."  The ALJ found that

physical examination results and imaging results were inconsistent with a finding

of debilitating impairments.  Tr. 25.  A medical opinion may be rejected if it is

unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of*

*Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278

F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.

2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  In support of his

finding, the ALJ noted that x-rays taken of the lumbosacral spine in February 2013

revealed only "mild facet sclerosis" at L4/L5 and L5/S1 and were otherwise

unremarkable.  Tr. 22 (citing Tr. 543).  He noted that x-rays of Plaintiff's hip

revealed "areas of faintly increased stir signal seen to involve the SI joints," and

"minimal fatty marrow replacement involving the SI joints," and that the findings

were ultimately deemed "subtle" and reflective of "mild changes of bilateral

sacroiliitis."  Tr. 22 (citing Tr. 545).  Finally, he noted that physical examination

results, discussed in detail *infra*, did not include significant limitations and were

consistent with the RFC.  Tr. 22.  The ALJ's interpretation of the medical evidence

is rational and supported by substantial evidence.  This was a specific and

legitimate reason to give limited weight to Dr. Flavin's opinion.

Overall, the ALJ did not err by giving limited weight to the letter submitted

by Dr. Flavin.

**B. Step Two**

Next, Plaintiff contends the ALJ erred at step two by failing to list ankylosing spondylitis as a severe impairment. ECF No. 14 at 17-18. At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, *i.e.*, one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques. 20 C.F.R. § 416.921. In other words, the claimant must establish the existence of the physical or mental impairment through objective medical evidence (*i.e.*, signs, laboratory findings, or both) from an acceptable medical source; the medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion. 20 C.F.R. § 416.921.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing,

pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.922(a); SSR 85-28.[3]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ concluded that Plaintiff's obesity, spine disorder, fibromyalgia, major joint dysfunction, affective disorder, and anxiety disorder were severe impairments.  Tr. 18.  Plaintiff contends the ALJ erred by not including ankylosing spondylitis as a severe impairment and argues that her medical record supports a severe impairment of ankylosing spondylitis, which she

---

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 14

alleges limits the function of her hands, ankles, and feet.  ECF No. 14 at 17-18.

However, the ALJ did find ankylosing spondylitis to be a severe impairment; he

merely listed it as "spine disorder."  ECF No. 15 at 10.  At the hearing, the ALJ

stated, "you identified anxiety, depression, and ankylosing spondylitis as your

reasons for feeling that you're unable to work.  The Disability Determination

Service also found spine disorder, that's probably the ankylosing spondylitis…"

Tr. 163-64.  To which Plaintiff replied, "Yes."  Tr. 164.  Moreover, during the

hearing, ankylosing spondylitis and its symptoms were discussed while no

independent spine disorder was mentioned.  *See, e.g.*, Tr. 170-72.  Throughout the

record, Plaintiff's listed medically determinable impairments included "spine

disorder" and lacked "ankylosing spondylitis."  *See* Tr.  193-94, 205-06.  From

this, the Court concludes that the ALJ listed ankylosing spondylitis as a severe

impairment using the general term "spine disorder."

       More importantly, the Court finds that there is no indication that the ALJ

misunderstood the nature of Plaintiff's ankylosing spondylitis so as to constitute

harmful error.  *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (no

harmful error where the ALJ listed "personality disorder" as a severe impairment

at step two in lieu of "antisocial personality disorder" because there was no

indication that the ALJ misunderstood the nature of the impairment).  In his

decision, the ALJ analyzed the symptoms and medical evidence related to

Plaintiff's ankylosing spondylitis. He assessed radiologic results, Tr. 22, including

x-rays of the hip joint, where Plaintiff complained of severe pain stemming from

ankylosing spondylitis, *see* Tr. 168, 170, and where Plaintiff's rheumatologist

noted "bilateral sacroiliitis." Tr. 385. He assessed physical examination results

noting various limitations in the range of motion of Plaintiff's spine, Tr. 22, which

Plaintiff attributed to her ankylosing spondylitis. Tr. 400. He assessed medical

reports documenting Plaintiff's "slightly decreased" grip strength and "mild

synovitis," Tr. 22 (citing Tr. 636, 407), in light of Plaintiff's reports of severe

manipulative limitations and significant swelling and pain. As a result, even if the

ALJ erred by employing the general term "spine disorder" in lieu of ankylosing

spondylitis, he nonetheless fully considered the symptoms and limitations

associated with ankylosing spondylitis throughout his analysis. Plaintiff did not

establish that she was harmed by this error.[4] *See Heather O. v. Berryhill*, No. 3:18-

---

[4] The Court notes that ankylosing spondylitis falls under Listing 14.09

(Inflammatory Arthritis) and a disability finding under the Listing requires that the

claimant prove: (1) Ankylosis (fixation) of the dorsolumbar or cervical spine as

shown by appropriate medically acceptable imaging and measured on physical

examination at 45° or more of flexion from the vertical position (zero degrees); or

(2) Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by

CV-513-SI, 2019 WL 1922524, at *3 (D. Or. Apr. 30, 2019) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (reversible error occurs only when a severe impairment erroneously excluded at step two caused additional functional limitations not accounted for in the remainder of the analysis).

_____

appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity. The Court further notes that the ALJ did not discuss Listing 14.09 at step three, but rather assessed Listing 1.04, relating to disorders of the spine. *See* Tr. 19. Nonetheless, Plaintiff did not argue error at step three, *see generally* ECF Nos. 14, 16, consequently, any challenge is waived. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Moreover, Plaintiff failed to establish she was harmed by the error because she failed to identify evidence in the record indicating that she would meet or equal the criteria for Listing 14.09(C), as set forth above. *See Montgomery v. Colvin*, No. 3:12-CV-01759-JO, 2013 WL 6055228, at *6 (D. Or. Nov. 12, 2013).

### C. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims.  ECF No. 14 at 14-16; ECF No. 16 at 3-4.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.  *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear

and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found Plaintiff's medically determinable impairments could cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Tr. 23.

*1. Daily Activities*

The ALJ found Plaintiff's claims of debilitating mental and physical impairments were inconsistent with her reported daily activities. Tr. 22-23. A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) the claimant "is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*citing Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ability to care for others without help may undermine claims of totally disabling pain, *id.*, so long as the record identifies the nature, scope, and duration of the care involved and establishes that the care is "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). It is well-established that a claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

Here, the ALJ noted Plaintiff reported she routinely takes care of her two children, ages three and nine, including getting her older daughter ready for school, making breakfast for her daughter, helping her daughter with homework, bathing

both of her children, and preparing her children for bed. Tr. 23. He noted Plaintiff

also takes care of her small dog, taking it for "short walks around [the] property for

exercise and potty," and grooming it. Tr. 23. He noted Plaintiff reported cleaning,

doing the laundry, and cooking on a regular basis and that she occasionally

engaged in sewing and crocheting as hobbies. Tr. 23. The ALJ found that these

activities were inconsistent with Plaintiff's alleged physical symptoms and

limitations, such as her claim that her pain required her to recline and rest for

nearly 70% of the day. Tr. 23. He also found Plaintiff's reported activities, such

as leaving the house once per day, driving her car alone, playing cards and board

games for fun, and independently shopping for groceries once per week, were

inconsistent with her alleged mental limitations and symptoms stemming from her

depression, anxiety, and pain-induced loss of concentration. Tr. 22.

　　　Plaintiff contends that her reported daily activities are not inconsistent with

her allegations and that they do not rise to the level of workplace activities. ECF

No. 14 at 15-16. She notes that, while she listed crocheting and sewing as hobbies,

she only engages in them "occasionally" and "not as much as [she] used to do it,"

and that, while she testified that she cooks and cleans, she only cooks

prepared/canned meals or sandwiches, and her routine cleaning can take her up to

two days to complete "because of her pain." ECF No. 14 at 15. On balance, the

ALJ reasonably interpreted Plaintiff's reported daily activities to be inconsistent

with her allegations of debilitating symptoms of fibromyalgia and ankylosing spondylitis (including 24/7 pain in all joints, Tr. 170; aching and sharp pain that interferes with her ability to walk, work, bathe, dress, obtain care, care for herself, prepare meals, and clean, Tr. 32, 54; monthly debilitating flare-ups of fibromyalgia, Tr. 49; needing to spend 70-75% of the day in a reclining position, Tr. 181; intermittent numbness in her arms and hands, Tr. 54; inability to be on her feet or sit down for more than 30 minutes without intense pain, Tr. 321; difficulty sleeping, Tr. 173-74; difficulty rising from the toilet and dressing, Tr. 322; and intermittent inability to focus or concentrate due to pain, Tr. 181), and depression and anxiety (including having a down mood 65-75% of the time, Tr. 552; debilitating panic attacks, Tr. 113; anhedonia, Tr. 102; low motivation and poor focus, Tr. 553; and difficulty concentrating, Tr. 175). Plaintiff's reported daily activities are relevant to the alleged degree of severity of her specific symptoms set forth above. *See Molina*, 674 F.3d at 1113 ("[e]ven where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). Although the evidence of Plaintiff's daily activities could form the basis of an interpretation more favorable to her, the ALJ's interpretation was rational, and the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *See Burch v.*

*Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (internal quotation marks and alterations omitted). This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

### 2. Work History

The ALJ found that evidence of poor earnings prior to Plaintiff's alleged onset date and statements that she stopped working to take care of her children indicated that "reasons other than medical conditions" may be deterring her from working. Tr. 22. Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that she is unable to work. *Thomas*, 278 F.3d at 959; SSR 96–7 (factors to consider in evaluating credibility include "prior work record and efforts to work"); *Smolen*, 80 F.3d at 1284; 20 C.F.R. § 416.929 (work record can be considered in assessing credibility). In addition, an ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition when weighing the claimant's symptom reports. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). In support of his finding, the ALJ noted Plaintiff "had no substantial gainful activity in the [six] years before filing for SSI in 2012." Tr. 22 (citing Tr. 289-90). He further noted Plaintiff "quit work to become a homemaker when she had her first child, followed by her second child," and concluded her childcare obligations were "likely part of the reason she cannot enter the workforce." Tr. 22.

Plaintiff argues that the ALJ's consideration of her prior earning capacity is improper because "the records show that Ankylosing Spondylitis and Fibromyalgia symptoms have been treated for years before the relevant time frame." ECF No. 14 at 16. However, as noted by the ALJ, Plaintiff did not testify that she stopped working because of her symptoms or medical issues generally; rather, she testified that she stopped working for other reasons to include taking care of her children and attempting to switch professions. Tr. 165-66. The ALJ reasonably relied on this evidence to conclude Plaintiff stopped working for reasons unrelated to her impairments. This was a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

### 3. Inconsistent Statements

Next, the ALJ found that Plaintiff made inconsistent statements regarding her mental impairments. Tr. 22. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen*, 80 F.3d at 1284 (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

Plaintiff failed to challenge this reason in her briefing, thus, any challenge to the ALJ's findings is waived. *See Carmickle*, 533 F.3d at 1161 n.2. Nonetheless, the Court conducted an independent review of the ALJ's decision and finds the ALJ's finding is supported by substantial evidence in the record. The ALJ noted that, despite Plaintiff's allegations of debilitating depression and anxiety, statements contained in her function reports indicated she "can handle changes in routine with no problems," and has no problems dealing with authority figures, Tr. 327, that she is able to get out of the house independently every day, Tr. 324, and that she enjoys playing board games and cards, Tr. 325. He concluded that her statements regarding the intensity of her mental symptoms were inconsistent with her statements regarding her hobbies, social activities, and interpersonal skills. Tr. 22. Because the ALJ's interpretation is rational and supported by substantial evidence, this constitutes a clear and convincing reason to give less weight to Plaintiff's subjective symptom testimony.

4.  *Objective Medical Evidence*

The ALJ found Plaintiff's symptom testimony regarding her physical impairments was inconsistent with the medical evidence. Tr. 22. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

*Fair*, 885 F.2d at 601; *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

Plaintiff failed to specifically challenge this reason in her briefing when discussing the ALJ's treatment of her symptom claims; the only statement that could be construed to challenge the finding was Plaintiff's statement "the ALJ made vague assertions that her testimony was inconsistent with the record." ECF No. 14 at 14. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *see also Locastro v. Colvin*, 2015 WL 917616, at *2 (W.D. Wash. Mar. 3, 2015) ("The Court may deem arguments that are unsupported by explanation to be waived.") (citations omitted); *Demelo v. Colvin*, 2015 WL 1320213, at *4 (E.D. Cal. Mar. 24, 2015) ("Given that Plaintiff has failed to properly develop the argument .... the Court considers [it] waived and will not consider this issue.") (citing *Independent Towers of Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

Nonetheless, the Court conducted an independent review of the ALJ's decision and finds the ALJ's finding is supported by substantial evidence in the record.

The ALJ noted that neither radiologic results nor physical examination results were consistent with the severe physical limitations alleged by Plaintiff. Tr. 22. For example, the ALJ noted that x-rays taken of the lumbosacral spine in 2013 were unremarkable apart from a finding of "mild facet sclerosis" at L4/L5 and L5/S1. Tr. 543. Similarly, he noted that x-rays taken of Plaintiff's hip, where she complained of severe pain in her joint, revealed "barely perceptible" "areas of faintly increased stir signal to involve the SI joints," and "minimal fatty marrow replacement involving the SI joints." Tr. 545. Additionally, the ALJ found that physical examination results did not indicate significant limitations beyond the RFC. Tr. 22. He identified various examination results that indicated mild to moderate limitations, even where Plaintiff alleged severe limitations and pain. *See* Tr. 401 (2014: moderate limitations in side bending of spine, mild difficulty standing on toes and heels); Tr. 435 (2013: "exquisitely" tender midline lumbar spine); *but see* Tr. 467 (2014: "quite tender" midline lumbar spine); Tr. 406-07 (2014: "mild synovitis" in her hands, ankles, and feet where Plaintiff alleged "significant swelling and pain"); Tr. 635-36 (2015: slightly decreased grip strength where Plaintiff described severe manipulative limitations); and Tr. 653 (2016: midline/lower spine and SI joints "diffusely tender"). He noted Plaintiff

inconsistently reported/denied fatigue despite alleging that she needed to take naps during the day. *See* Tr. 396, 657 (denied fatigue); *but see* Tr. 413, 447, 469, 662 (reported fatigue). The ALJ reasonably considered the medical evidence and concluded it did not support the severity of Plaintiff's symptoms. This finding is supported by substantial evidence.

Overall, the ALJ's reasons are supported by substantial evidence and together constitute a sufficient basis for only partially crediting Plaintiff's testimony.

**D. Step Five Analysis**

Plaintiff argues the ALJ erred at step five. ECF No. 14 at 16-18. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant can perform other work, and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. Plaintiff contends the ALJ's step five finding was based on an incomplete hypothetical posed to the vocational expert.

ECF No. 14 at 16-18; ECF No. 16 at 4. Specifically, Plaintiff argues that a limitation regarding "potential for absenteeism" should have been included. ECF No. 14 at 17. Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence of Dr. Flavin, specifically as it related to debilitating episodic flare-ups, and Plaintiff's symptom claims. ECF No. 14 at 17 ("failed to take into consideration the undisputed limitations addressed by Dr. Flavin and the potential for absenteeism"). For reasons discussed throughout this order, the ALJ's findings regarding Plaintiff's symptom testimony and the medical opinion evidence are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in finding Plaintiff capable of performing other work in the national economy based on the hypothetical containing Plaintiff's RFC. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED January 31, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE